UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

RICHARD L. DAVIS                    CIVIL ACTION NO. 14-cv-2364

VERSUS                              JUDGE FOOTE

N. BURL CAIN                        MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

A Caddo Parish jury heard evidence that Richard L. Davis ("Petitioner") had a sexual relationship with a 16-year-old female when he was 24 years old and married to another woman. There was also evidence that Petitioner performed various sexual acts, including penetration, on a five-year-old female on multiple occasions. A unanimous jury convicted Petitioner of aggravated rape (victim under age 13) and indecent behavior with a juvenile. Petitioner was given the death penalty for the aggravated rape. The convictions were affirmed on direct appeal, but the aggravated rape sentence was reduced to life imprisonment without benefit of parole. Petitioner received a concurrent seven-year sentence on the indecent behavior count. State v. Davis, 26 So.3d 802 (La. App. 209), writ denied, 38 So.3d 355 (La. 2010), cert. denied, 131 S.Ct. 922 (2011).

Petitioner pursued a post-conviction application in state court, and he then filed the federal petition for writ of habeas corpus relief that is now before the court. His principal habeas claims are ineffective assistance of counsel (failure to call certain witnesses, failure

to adequately investigate, failure to request independent expert, etc.), double jeopardy on the contention that a prior charge of promoting prostitution involving the 16-year-old victim was the same as the current charge, prosecutorial misconduct based on a post-trial affidavit from a former girlfriend who alleges that she was threatened by the prosecution to giving false testimony, and wrongful admission of other crimes evidence. The State challenges the habeas claims on the merits and argues that the petition is untimely. For the reasons that follow, it is recommended that the petition be dismissed as untimely.

**Timeliness Calculation**

A one-year period of limitations applies to petitions for habeas corpus. In an ordinary case, such as this one, the limitation period runs from the date on which the state court judgment of conviction "became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The first task, then, is to determine the date on which Petitioner's conviction became final after direct review.

The statute divides petitioners into two categories: those who pursue direct review all the way to the Supreme Court and those who do not. For those who do not, their conviction becomes final when the 90-day period for pursuing direct review in the Supreme Court expires. Matthis v. Cain, 627 F.3d 1001, 1003 (5th Cir. 2010). For petitioners who do seek review in the Supreme Court, their conviction becomes final when the Supreme Court affirms the conviction on the merits or denies a petition for certiorari. Gonzalez v. Thaler, 132 S.Ct. 641, 653 (2012); Catchings v. Fisher, 815 F.3d 207, 210 (5th Cir. 2016). Petitioner filed a

timely petition for certiorari, which the Supreme Court denied on (Monday) January 10, 2011. Petitioner's conviction became final for federal habeas purposes on that date.

The federal limitations clock began to tick on January 10, 2011, and it ran until Petitioner filed a state court application for post-conviction relief. 28 U.S.C. § 2244(d)(2) (a properly filed post-conviction application tolls the federal limitations period). Petitioner mailed his application from prison, and a Louisiana prisoner's *pro se* application is deemed filed when he delivers it to prison authorities for forwarding to the court. LeBeuf v. Cooper, 2007 WL 1010296 (5th Cir. 2007), citing Causey v. Cain, 450 F.3d 601, 605-06 (5th Cir. 2006). The state clerk of court stamped the application as filed on January 3, 2012. Tr. 3186. There is no direct evidence of the date Petitioner tendered the application to prison officials for mailing, but the application is signed and dated in two places with the date December 27, 2011. Tr. 3195. Letters that Petitioner sent with the application are also dated December 27, 2011. Tr. 3202-03. The State's memorandum uses the date in its timeliness calculations, thus implicitly accepting it as the date of filing.

The court will grant Petitioner the benefit of any doubt and consider the application to have been tendered to prison officials and filed the same day it was signed, December 27, 2011. That filing tolled the federal clock after 351 days had passed. The filing of the post-conviction application did not restart the one-year period. All time that passed between finality of the conviction and the filing of the post-conviction application counts against the one-year period. Lawrence v. Florida, 127 S.Ct. 1079, 1081-82 (2007); Flanagan v. Johnson, 154 F.3d 196, 199 n. 1 (5th Cir. 1998).

Petitioner's post-conviction application had a lengthy procedural history that involved remands and supplemental claims. The next-to-last step was when Petitioner sought a writ from the appellate court with respect to three of his claims. The court denied the writ with respect to two claims (double jeopardy and ineffective assistance) but remanded the new evidence/prosecutor misconduct claim for an evidentiary hearing. Tr. 3741. The State sought a supervisory writ from the Supreme Court of Louisiana, which reversed the appellate court's remand order and reinstated the "order of the district court dismissing all claims for post-conviction relief upon the pleadings." That order, the final step in the post-conviction process, issued on June 20, 2014. Tr. 4094; State ex rel. Richard L. Davis v. State, 141 So.3d 276 (La. 2014).

That order by the Supreme Court of Louisiana ended the tolling effect of the post-conviction application. The 90-day opportunity to file a petition for certiorari after the state's high court denies a post-conviction application does not continue the tolling effect of a post-conviction application. Lawrence v. Florida, 127 S.Ct. 1079 (2007); Ott v. Johnson, 192 F.3d 510, 512 (5th Cir.1999).

With 351 days already expired, the federal clock began to run again on June 20, 2014. Petitioner had 14 days to timely file his federal petition. The fourteenth day was July 4, 2014, which was a federal holiday and a Friday. Federal Rule of Civil Procedure 6(a)(1)(C) states that the last day of a period is counted, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next business day. The next

business day for the court was Monday, July 7, 2014, so that was the final day for Petitioner to timely file his federal petition.

The federal petition benefits from a prisoner mailbox rule that deems it filed when the prisoner tenders it to prison officials for delivery to the district court. Spotville v. Cain, 149 F.3d 374 (5th Cir. 1998). The Clerk of Court and the Louisiana State Penitentiary, where Petitioner is housed, have an arrangement by which prison officials scan a prisoner's legal filings and email them to the court. The process affords benefits and cost savings to the prisoner, the prison, and the court. The court sees no reason that a filing submitted to prison officials for emailing is any less entitled to the mailbox rule than one that is tendered for mailing through the postal service. In either scenario, the prisoner is at the mercy of prison officials, once he delivers his filing into their hands, for them to deliver it to the court.

Petitioner's cover letter that accompanies his federal petition is dated (Wednesday) July 16, 2014, and he signed and dated the petition and memorandum with that same date. The final page of his 55-page memorandum includes a declaration that the habeas petition "was placed in the Federal Mailbox of the Louisiana State Penitentiary for Electronic Transfer to the United States District Court .... on this 16 day of July 2014." A cover letter that accompanied the petition was stamped "Received" by the Legal Programs Department the next day, July 17, 2014. Another stamp on the same page indicates that the document was scanned at the prison and emailed on July 17, 2014. The federal clerk of court received the petition that same day.

The final day for Petitioner to file a timely petition was July 7, 2014. Whether he tendered his petition to prison officials on July 16 or 17, it was untimely by at least nine days. Petitioner argues that his delay is attributable to an error by the Supreme Court of Louisiana when it mailed him notice of its final decision. Any such delayed notice cannot make the filing timely. The state post-conviction application was no longer "pending" once the state court issued its final denial on June 20, 2014, so the federal limitations period started to run again, whether or not Petitioner had notice of that denial. Phillips v. Donnelly, 216 F.3d 508, 511 (5th Cir. 2000). Whether the delayed notice provides grounds equitable tolling will be discussed below.

**Equitable Tolling**

    **A. Petitioner's Burden**

The one-year limitation of Section 2244(d) "is subject to equitable tolling in appropriate cases." Holland v. Florida, 130 S.Ct. 2549, 2560 (2010). The petitioner who seeks equitable tolling bears the burden of proof on the issue. Clarke v. Rader, 721 F.3d 339, 344 (5th Cir. 2013). He must shows (1) that he has been pursuing his rights with "reasonable diligence" and (2) that some extraordinary circumstance stood in his way and prevented timely filing. Holland, 130 S.Ct. at 2562.

The "extraordinary circumstances" must be factors outside the petitioner's control; delays of his own making do not qualify. In re Wilson, 442 F.3d 872, 875 (5th Cir. 2006). Equitable tolling "applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his

rights." Felder v. Johnson, 204 F.3d 168, 171 (5th Cir. 2000). A district court is afforded discretion in applying the doctrine; refusal to invoke it is reviewed only for abuse of discretion. Molo v. Johnson, 207 F.3d 773, 775 (5th Cir. 2000).

**B. Relevant Facts**

Petitioner began the state post-conviction process in 2011 after 351 days of the 365 available days had passed. The trial court and appellate court initially denied the application. Petitioner then filed both a motion for reconsideration in the appellate court and (in June 2012) an application for a supervisory writ with the Supreme Court of Louisiana. Tr. 3505. The appellate court granted the application for rehearing. It stated that the trial court did not err in denying most of the claims, but the appellate court believed that the trial court may not have considered claims set forth in a supplemental application, so it remanded those claims for the trial court to consider. Tr. 3671.

The trial court issued a ruling on the supplemental claims and, in April 2013, the appellate court upheld that decision in part but ordered a remand for an evidentiary hearing on the claim of prosecutorial misconduct based on the affidavit from one of the witnesses. Tr. 3740. The State's application for rehearing was denied, and the State then filed a writ application in the Supreme Court of Louisiana on July 30, 2013. Tr. 3882. Almost 11 months later, on June 20, 2014, the Supreme Court of Louisiana granted the State's writ and reinstated the trial court's order that denied all claims for post-conviction relief. Tr. 4094. That denial ended the tolling effect of the post-conviction application and commenced the running of the remaining 14 days of the federal limitations period.

Petitioner represents in his traversal (Doc. 18) that the Supreme Court incorrectly addressed the notice of its denial that it mailed to Petitioner. The court mistakenly used the trial court docket number rather than Petitioner's Department of Corrections ("DOC") number in the address. This caused the prison's mailroom to return the notice to the Supreme Court. A copy of the envelope backs Petitioner's representations. Doc 4, Ex. 19. It shows that the mailroom wrote on the envelope "Name & DOC # do not match" and "Not at LSP." The date-stamps on the envelope suggest that the Supreme Court received the returned mail on (Friday) June 27, 2014 and corrected the address. Petitioner represents that the court remailed the notice on (Monday) June 30 and that it arrived at the prison's mailroom on (Wednesday) July 2. He claims that, because of the July 4 holiday that Friday, he did not personally receive the notice until (Monday) July 7, 2014.

Petitioner's traversal refers to attachments to support these allegations, but there are no attachments. The events described are nonetheless plausible based on the evidence that is available. When Petitioner received the notice on July 7, that was the final day to timely file a federal petition. Petitioner waited nine more days to sign his federal petition and submit it to the legal department for filing.

**C. Diligence**

"Equity is not intended for those who sleep on their rights." In re Wilson, 442 F.3d at 875, quoting Fisher v. Johnson, 174 F.3d 710, 715 (5th Cir. 1999). The person who invokes equitable tolling must demonstrate reasonable diligence, though he need not show

maximum feasible diligence. Mathis v. Thaler, 616 F.3d 461, 474 (5th Cir. 2010), citing Holland, 130 S.Ct. at 2565.

"Long delays in receiving notice of state court action may warrant equitable tolling." Hardy v. Quarterman, 577 F.3d 596, 598 (5th Cir. 2009). Even then, a petitioner must show that he " 'pursued the [habeas corpus relief] process with diligence and alacrity' both before and after receiving notification." Id., quoting Phillips v. Donnelly, 216 F.3d 508, 511 (5th Cir. 2000). The facts show that Petitioner did not act with diligence before or after he received notice.

Petitioner put himself in a dangerous position by waiting until day 351 to file his post-conviction application and toll the federal limitations period. He has not articulated any legitimate reason for waiting until the last minute to file. By doing so, he left himself with only 14 days to file in federal court after the state process ended. That is not diligence. Nelms v. Johnson, 51 Fed. Appx 482 (5th Cir. 2002) ("This court has found no case in which equitable tolling was granted after a petitioner had let ten months of the AEDPA limitations period slip by."); Brown v. Cain, 2017 WL 1251000, *7 (M.D. La. 2017) (collecting cases that found a lack of diligence by those who waited several months to file a post-conviction application or retain counsel); and Atkins v. Chappius, 2017 WL 1489140, *2 (W.D. NY 2017) ("plaintiff waited until 12 days prior to the expiration of the statute to file his motion for collateral relief, indicating that he did not employ due diligence in pursuing his claims").

Petitioner's next opportunity to demonstrate diligence was after his state application was denied. He should have been on alert as early as June 2012 that the state process could

soon come to an end. That was when, after the lower courts had denied his application in full, he applied for supervisory writ to the Supreme Court of Louisiana. If that application and the pending request for rehearing in the appellate court had been denied, Petitioner would have needed to file his federal petition immediately. Thus, he should have had his petition ready to go soon after that time.

Rehearing was, however, granted, and that extended the life of the post-conviction process, which afforded Petitioner even more time to get his federal petition ready. Petitioner should have again been on high alert in July 2013 after the State filed its application to the Supreme Court of Louisiana and asked that court to deny all of the post-conviction claims. Petitioner then had almost 11 months that the State's application was pending to get his federal petition ready to file within the precious 14 days that would remain if the Supreme Court granted that relief.

The Supreme Court did grant the State's requested relief and ended the tolling on June 20, 2014. Petitioner received actual notice of the denial on July 7, 2014. He should have been able to quickly determine that the date of his receipt was also his last day to make a timely filing. At that point, a reasonable person would have had his federal petition ready to go, prepared somewhere over the course of the two years during which this event could have happened at any time. And a reasonable person would have placed the petition in the mail immediately. Instead, Petitioner waited nine more days, until July 16, 2014, to tender his federal petition to prison officials. A nine-day delay may seem fairly diligent in the abstract, but it was not given the context of this case.

**D. Extraordinary Circumstances**

The doctrine of equitable tolling is applied restrictively and only in cases that present rare and exceptional circumstances. Mathis, 616 F.3d at 475. That a petitioner did not receive notice that the federal limitations period had ceased to toll may be an extraordinary circumstance that warrants equitable tolling. Williams v. Thaler, 400 Fed. Appx. 886, 892 (5th Cir. 2010); Hardy, 577 F.3d at 598. On the other hand, brief delays, such as those attributable to holidays, are not extraordinary. Saunders v. Senkowski, 587 F.3d 543, 548-49, 550 (2d Cir. 2009) (normal delay in mail service around federal holiday weekend was not extraordinary).

This is not a case like Williams or Prieto v. Quarterman, 456 F.3d 511 (5th Cir. 2006) where the state or federal court actively misled the petitioner about the status of his post-conviction application or the deadline for his federal petition. The Supreme Court of Louisiana did make a mistake in the addressing of Petitioner's mail, but it was sorted out and cured within a few days. Such mistakes are a bit unusual but not unheard of. The mistake did not result in a lengthy delay. The markings on the envelope indicate that the Supreme Court mailed notice on June 20, the same day it issued its decision, and the prison mailroom returned the item on June 25. Petitioner claims that the mailroom finally received the item on (Wednesday) July 2 but, for reasons that Petitioner attributes to the (Friday) July 4 holiday, he did not get his hands on the notice until Monday, July 7.

Had the Supreme Court of Louisiana properly addressed the envelope in the beginning, the notice would have been received in the prison mailroom on about June 25

rather than July 2. That means the mistake caused only a seven-day delay. The Fifth Circuit affirmed the denial of equitable tolling in a similar case with a nine-day delay, in Kangas v. Dretke, 100 Fed. Appx 977 (5th Cir. 2004) ("The state's delay of nine days in transmitting the notice of the court's action on Kangas's application for state habeas relief, in combination with Kangas waiting until only three days remained in the statutory period to file his state writ application, does not constitute a 'rare and exceptional circumstance' warranting equitable tolling."). A district court took the same approach in Adams v. Quarterman, 2008 WL 763071, *4 (N.D. Tex. 2008) ("The state's delay of eight days in notifying Adams of the denial of his state habeas application, in combination with Adams waiting until only five days remained in the limitations period to file his state habeas application, does not constitute a rare and exceptional circumstance warranting equitable tolling."). See also Nelms v. Johnson, 51 Fed. Appx. 482 (5th Cir. 2002) (five-day delay between order that denied state application and the date the court mailed notice to attorney was "easily within the reasonable time limits that a state agency may use to notify interested citizens of its actions, hence there is nothing extraordinary" to favor equitable tolling).

**E. Conclusion**

There are no bright line rules in determining equitable tolling. The "circumstances of each case, taken together," must determine whether a particular prisoner was diligent and the facts so extraordinary that he is entitled to equitable tolling. Williams, 400 Fed. Appx. at 891. "Courts must consider the individual facts and circumstances of each case in

determining whether equitable tolling is appropriate." Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002).

Petitioner waited until almost the end of the federal limitations period to file a post-conviction application and toll it. Courts in cases cited above have found such delays not deserving of equitable tolling. Another example is the death row inmate in In re Lewis, 484 F.3d 793 (5th Cir. 2007) who waited until day 364 to file his state application, leaving one business day to file his application in federal court. His federal filing was one day late. The Fifth Circuit held that the petitioner was not entitled to equitable tolling because he made the decision to delay his state filing to such a late date. His "decision to delay his filing to the very last minute cannot be said to have resulted from rare and extraordinary circumstances." Id. at 798. Such action is also indicative of a lack of diligence.

The result was the same in Ott v. Johnson, 192 F.3d 510 (5th Cir. 1999), when a prisoner waited until day 364 to file his state application and then mailed his federal petition on the first business day after receiving notice of the denial of the state application. There were no extraordinary circumstances. The delay was "a matter totally within the control of Ott." Id. at 514.

There was a delay, although only about one week, in Petitioner receiving notice that his state application was denied. It appears the delay was attributable to an ordinary mistake and not any intentional deception by the state court. Such delays in the processing of prison mail are not unexpected, which is all the more reason that Petitioner should not have waited so late to file his state application and place himself in such a precarious situation.

And Petitioner was on notice as early as June 2012 that the tolling effect could cease at any time, after which he would have two weeks (less a few days for the mail to arrive) to file his federal petition. Reasonable diligence would dictate that Petitioner use the many months that passed to prepare his federal petition and file it immediately upon getting notice the state process had ended. Petitioner instead waited nine days before making an effort to file with the federal court.

When the overall facts and circumstances are considered, Petitioner did not act with sufficient diligence before or after he received notice, and the state court's delay in delivering notice was a rather ordinary one rather than extraordinary circumstances that would warrant the rare and exceptional application of equitable tolling. The circumstances here are the rather run of the mill case of a petitioner missing a deadline due largely to waiting so late to begin the process. And the fact that he was untimely by only a few days does not itself warrant tolling. Lookingbill v. Cockrell, 293 F.3d 256, 264 (5th Cir. 2002) ("We have consistently denied tolling even where the petition was only a few days late[.]").

Accordingly,

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be denied as untimely.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an

extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a COA when it enters a final order adverse to the applicant. "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 120 S.Ct. 1595, 1604 (2000). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a COA should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 8th day of August, 2017.

Mark L. Hornsby
U.S. Magistrate Judge